T.C. Memo. 2002-226


UNITED STATES TAX COURT


BRANDON CHRISTOPHER MERRIWEATHER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11167-00L.              Filed September 10, 2002.


Brandon Christopher Merriweather, pro se.

<u>Martha J. Weber</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner

seeks review of respondent's determination to proceed with

_____

    [1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

collection of his 1997 tax liability.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the attached exhibits, and our findings in Merriweather v. Commissioner, T.C. Memo. 2001-88, are incorporated herein by this reference. At the time he filed the petition, petitioner resided in Memphis, Tennessee.

Personal Background/History

From 1990 until early 1996, petitioner and Linda Harrell (Ms. Harrell) lived together. Petitioner and Ms. Harrell were never married.

Ms. Harrell has three children: Ricky Harrell, Jr., Calesa Harrell (Calesa), and Gabriel Harrell born January 12, 1987, December 28, 1992, and September 27, 1996, respectively. Ricky Harrell, Sr.,[3] is Ricky Harrell, Jr.'s, father. Orlando Patterson is Gabriel Harrell's father. Ms. Harrell is Calesa's biological mother. Until sometime in 1995, petitioner thought

---

[2] In Merriweather v. Commissioner, T.C. Memo. 2001-88, we granted respondent's Motion To Dismiss the Tax Years 1995 and 1996 for Failure to State a Claim upon Which Relief Can Be Granted because (1) his only argument regarding 1995 and 1996 was that he wanted to contest the underlying liabilities for those years, (2) he received a notice of deficiency for 1995 and 1996, and (3) pursuant to sec. 6330 he is barred from contesting his underlying liabilities for 1995 and 1996. This opinion addresses petitioner's 1997 taxable year on which we concluded he could proceed forward. Id.

[3] Ms. Harrell was married to Ricky Harrell, Sr., when Calesa was born and is still married to Ricky Harrell, Sr.

Calesa was his daughter. During 1995, petitioner took a blood test that determined he was not Calesa's biological father. Calesa still thinks petitioner is her father.

During 1997, Calesa lived the majority of the year with Ms. Harrell in public housing. Calesa spent Friday nights through mid-day Sunday with petitioner. Calesa split holidays between Ms. Harrell and petitioner; i.e., if Calesa spent Thanksgiving with petitioner, she spent Christmas with Ms. Harrell.

During 1997, petitioner worked at Valvoline Instant Oil Change. He was paid approximately $8.70 per hour. His earned income and modified adjusted gross income for 1997 was $11,847.

Calesa received no support from her biological father. During 1997, petitioner purchased approximately $400 worth of clothing and shoes for Calesa. Petitioner bought most of Calesa's clothes. Petitioner provided babysitters for Calesa. Petitioner also took Calesa out for meals at Burger King, McDonald's, and other restaurants that children like.

Petitioner still sees Calesa and provides some support for her even though he is not her biological father.

Tax Return and Collection Activities

Petitioner filed a Federal individual income tax return for 1997. On his 1997 return, petitioner listed Calesa as his daughter and claimed her as a dependent. He also claimed head-of-household status and an earned income credit (EIC).

On October 29, 1998, respondent mailed petitioner a notice of deficiency for 1997 (notice of deficiency). Petitioner, however, did not receive the notice of deficiency. On February 21, 1999, respondent assessed the tax liability determined in the notice of deficiency.

On October 14, 1999, respondent mailed petitioner a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing, Letter 1058, (notice of intent to levy) with regard to petitioner's 1997 tax liability. On October 19, 1999, petitioner filed a Request for a Collection Due Process Hearing, Form 12153, stating that he was not liable for the taxes set forth in the notice of intent to levy. On September 28, 2000, respondent issued to petitioner a notice of determination determining to proceed with collection for 1997.

## OPINION

Respondent concedes that petitioner did not receive the notice of deficiency for 1997 and that he was entitled to contest the underlying tax liability for 1997. Accordingly, we shall review petitioner's underlying tax liability for 1997. Goza v. Commissioner, 114 T.C. 176 (2000). Where the underlying tax liability is properly at issue, we review that issue on a de novo basis. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, supra at 181. The issues regarding petitioner's underlying tax liability are whether petitioner was entitled to

claim (1) a dependency exemption for Calesa, (2) head-of-household filing status, and (3) an EIC.

## Dependency Exemption

Section 151(c) allows a taxpayer to deduct an exemption amount for each dependent, as defined in section 152. A dependent is an individual in one of the categories listed in section 152(a), over half of whose support is received from the taxpayer. Sec. 152(a). In order to qualify as a dependent, the individual must be related to the taxpayer in one of the ways enumerated in section 152(a)(1) through (8), or, if the individual is unrelated to the taxpayer, the individual must live with the taxpayer and be a member of the taxpayer's household throughout the entire taxable year of the taxpayer. Sec. 152(a)(9); sec. 1.152-1(b), Income Tax Regs.; Trowbridge v. Commissioner, 268 F.2d 208 (9th Cir. 1959), affg. 30 T.C. 879 (1958); Turay v. Commissioner, T.C. Memo. 1999-315; Butler v. Commissioner, T.C. Memo. 1998-355.

Although petitioner identified Calesa as his daughter on his 1997 return, he is not related to her by blood or marriage. Calesa did not live with petitioner during all, nor even the majority, of 1997. Accordingly, petitioner was not entitled to claim a dependency exemption for Calesa for 1997.

## Head of Household

In order to qualify for head-of-household filing status,

petitioner must satisfy the requirements of section 2(b).
Pursuant to section 2(b), and as relevant therein, an individual
qualifies as a head of household if the individual is not married
at the close of the taxable year and maintains as his home a
household that constitutes for more than one-half of the taxable
year the principal place of abode of an individual who qualifies
as the taxpayer's dependent within the meaning of section 151.
Sec. 2(b)(1)(A)(ii).  Petitioner was not entitled to a dependency
exemption for Calesa for 1997.  Accordingly, petitioner did not
qualify as a head of household for 1997.[4]

Earned Income Credit

Section 32(a)(1) allows an eligible individual an EIC
against the individual's income tax liability.  An eligible
individual is any individual who either:  (1) Has a "qualifying
child" as defined by section 32(c)(3)(A), or (2) has no
qualifying child and meets the requirements of section
32(c)(1)(A)(ii).  Briggsdaniels v. Commissioner, T.C. Memo. 2001-
321.

A taxpayer must satisfy the requirements of section 32(c)(3)
in order to be entitled to the EIC for a qualifying child.  At a

---

[4]  Even if we had held that petitioner was entitled to a
dependency exemption for Calesa pursuant to sec. 152(a)(9), as a
matter of law, he still would not qualify for head of household
status.  Sec. 2(b)(3)(B)(i) provides that a taxpayer is not
considered to be a head of household by reason of an individual
who would not be a dependent for the taxable year but for sec.
152(a)(9).  See Butler v. Commissioner, T.C. Memo. 1998-355.

minimum, a qualifying child must have the same principal place of abode as the taxpayer for more than one-half the taxpayer's taxable year.[5]  Sec. 32(c)(3)(A)(ii).

Calesa lived with Ms. Harrell for the majority of 1997.  She spent weekends and some holidays at petitioner's home.  Calesa did not share the same principal abode as petitioner for more than one-half of 1997, let alone the entire year.  Accordingly, petitioner is not entitled to the EIC for 1997 on the ground of having a qualifying child under section 32(c)(3).

A taxpayer with no qualifying children is eligible for the EIC subject to, among other things, the phaseout limitations of section 32(a)(2).  Briggsdaniels v. Commissioner, supra.  For 1997, the EIC is completely phased out under section 32(a) for a taxpayer with no qualifying children if the taxpayer's earned income and adjusted gross income is over $9,769.  Id. Petitioner's earned income and adjusted gross income for 1997 was $11,847.  Therefore, petitioner was not entitled to claim an EIC for 1997.

Conclusion

Petitioner testified that Calesa is his daughter "in all the

---

[5]  An "eligible foster child", however, must have the same principal place of abode as the taxpayer for the taxpayer's entire taxable year.  Sec. 32(c)(3)(B)(iii)(II).  An eligible foster child is an individual, other than a son or daughter of the taxpayer, a descendant of a son or daughter of the taxpayer, or a stepson or stepdaughter of the taxpayer, who the taxpayer cares for as the taxpayer's own child.  Sec. 32(c)(3)(B)(iii).

ways that count." This, however, does not entitle him to claim a dependency exemption for Calesa, head of household status, or an EIC for 1997.

Petitioner has failed to raise a spousal defense, make a valid challenge to the appropriateness of respondent's intended collection action, or offer alternative means of collection. These issues are now deemed conceded. Rule 331(b)(4). Accordingly, we sustain respondent's determination to proceed with collection with respect to petitioner's 1997 tax year.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.